## JOHNSON *vs.* THE STATE.

[INDICTMENT FOR FORGERY OF BANK-BILL.]

1. *Sufficiency of indictment in description of forged instrument.*—An indictment which charges the forging or counterfeiting of " an instrument purporting to be a bank-bill for fifty dollars, purporting to be issued by the Georgia Railroad and Banking Company, an incorporated bank of the State of Georgia," being in the form prescribed by the Code, is sufficient.

2. *Same in alternative averment of offense.*—It is no objection to such an indictment, (Code, § 3506,) that it alleges, in one and the same count, that the prisoner " forged or counterfeited" the spurious bank-note.

3. *Relevancy of evidence showing prisoner's possession of similar counterfeited bank-notes, and attempting to conceal them.*—The fact that the prisoner, when arrested, two or three hours after an attempt on his part to pass the bank-note alleged to have been forged or counterfeited, had in his possession a large amount of similar counterfeited notes, which he evinced a desire to conceal, from the police-officers, while willingly exhibiting the genuine bank-notes which he had,—is relevant and admissible evidence against him, as tending to show that he knew the character of the forged note, that he had it in his possession for fraudulent purposes, and that he was the guilty agent in the perpetration of the forgery.

4. *Relevancy of evidence showing that genuine bank-notes, similar to forged note, were current.*—The fact that the genuine notes of the bank, which the prisoner is charged with counterfeiting, were at that time current in the community, is competent evidence against him, as bearing on the question of fraudulent intent, and tending to show a motive for the commission of the offense.

5. *Opinion of witness as expert.*—A person who is engaged in the exchange business, and the teller of a bank, each of whom has a knowledge of counterfeit bank-bills, and of the genuine notes of the bank which the prisoner is

charged with counterfeiting, and has had frequent dealings with that bank in relation to its notes, may each testify, as an expert, to the character of the note charged to have been forged or counterfeited; and the fact that the signatures to the bill are so perfectly counterfeited, " that they could discover no perceptible difference between it and the genuine notes, and that their opinion against its genuineness was founded mainly upon the imperfectness and indistinctness of the engraved impressions on it," is no reason for rejecting their opinions as evidence.

6. *To what witness may testify.*—A witness cannot be allowed to testify, that the prisoner " obtained honestly" the money which he had in his possession on leaving home.

7. *Proof of venue.*—The forgery being established, the prisoner's possession of the counterfeited note in the county in which the indictment was found, in the absence of all proof of his prior possession elsewhere, or other countervailing evidence, is sufficient to authorize the jury to infer that the forgery was committed in that county.

FROM the Circuit Court of Montgomery.
Tried before the Hon. JOHN GILL SHORTER.

THE first count in the indictment in this case, on which the trial was had, charged that the prisoner, Abraham Johnson, " forged or counterfeited an instrument purporting to be a bank-bill for fifty dollars, purporting to be issued by the Georgia Railroad and Banking Company, an incorporated bank of the State of Georgia, with intent to defraud," &c. A demurrer was interposed by the prisoner to this count, (specifications of the grounds of demurrer being waived,) but was overruled by the court; and the prisoner then pleaded not guilty. The rulings of the court on the trial, to which exceptions were reserved by the prisoner, are thus stated in the bill of exceptions:

" The State proved, that within the period covered by the statute of limitations, in the city and county of Montgomery, the prisoner offered to pass to Messrs. Pomroy & Gregory, in purchase of a pair of boots, a bill purporting to be a fifty-dollar bank-bill on the Georgia Railroad and Banking Company; that he had bargained with said firm for a pair of boots, had tried on the boots, and offered the fifty-dollar bill in payment, and the change (or difference between the price of the boots and the nominal value of the bill) was counted out, and laid on

the counter for him; that in the meantime, while the prisoner was trying on the boots, and before he received the change, one partner of the said firm took the said bill to two bankers, and, on his return, said to the prisoner, 'This bill is a counterfeit, and if you are a gentleman, you will take it back'; that the prisoner replied, 'I am a gentleman, and will take it back—I got it from a man in North Alabama, and paid good money for it; and I know he is a gentleman, and will take it back from me'; that the prisoner then took back the bill, and declined to take the boots, saying 'that he had no other money, or no smaller money,' (the witness was not certain which.) The testimony further showed, that the prisoner was arrested by some of the police-officers of the city of Montgomery, two or three hours afterwards, while in the act of mounting his horse near the market-house, and having a pair of saddle-bags on the horse; that he was taken by the said officers to a room in the city, where they proceeded to search him; that the prisoner took his pocket-book from his pocket, and handed it to them; that said pocket-book, on being opened, was found to contain over two hundred dollars in current money on different banks, in bills of various denominations, from five to twenty dollars inclusive, and one fifty-dollar bill purporting to be issued by the Georgia Railroad and Banking Company, which the prisoner said was the bill offered by him in payment for the boots; that while the officers searched his pockets, the prisoner made no resistance or objection thereto; that one of the officers then proposed to search further, and particularly the prisoner's boots; that when this offer was made, the prisoner drew a pistol, and told them to 'stand back'; that the officers then seized him, and found in the leg of his right boot a pocket-book containing sixteen hundred dollars in amount, in fifty-dollar bills purporting to be on the Georgia Railroad and Banking Company. To the introduction of this entire evidence, and to each portion thereof separately, the prisoner objected; but his objections were severally overruled by the court, and he excepted.

"The State then introduced one Hannon as a witness,

who testified, that he was acquainted with the currency
and exchange in the city of Montgomery, and the value
thereof; and that the bills of the Georgia Railroad and
Banking Company were current in said city. The prisoner
objected to the admission of this evidence, and excepted
to the overruling of his objection. This witness further
stated, that he was engaged in the currency and exchange
business, and was an expert in the examination of bank-
bills, and in the detection of counterfeit bills; that he
had remitted bills on the Georgia Railroad and Banking
Company to that bank, and knew the genuine bills of
that bank; that he had corresponded with Milligan, the
cashier of that bank, and from that knew the signature
of said Milligan; and that he had a general knowledge of
counterfeits from his knowledge of engraving. Upon
this evidence, the court permitted the witness, against
the prisoner's objection, to give his opinion, after an ex-
amination of the bills, that the bill offered by the prisoner
to Pomroy & Gregory, as also the bundle of similar notes
found in his boot, were counterfeited; to which ruling of
the court the prisoner excepted.

"The State then introduced J. J. Cook as a witness,
who testified, that he was the teller of the Central Bank
of Alabama at Montgomery, and had been engaged for a
considerable time in handling bank-bills, and was ac-
quainted with the genuine bills of the Georgia Railroad
and Banking Company; that said bank was located at
Augusta, Georgia; that he had frequently sent the bills
of said bank to Augusta, to the agent of the Central
Bank, and they were placed to the credit of the bank;
and that he was an expert in the examination of bank-
bills, and in the detection of counterfeits. Upon this
evidence, the court permitted said Cook, after an examina-
tion of the bills, to give his opinion that the bill offered
by the prisoner to Pomroy & Gregory, as well as the
similar bills found in his boot, were counterfeited; to
which ruling of the court the prisoner excepted.

"In addition to the testimony above given, said Han-
non and Cook further stated, that the counterfeiting was
so expertly done, that nine men out of ten, perhaps,

would probably have received the bills as genuine; that they had no other acquaintance with the handwriting of the president and cashier of the Georgia Railroad and Banking Company, than such as they had acquired as hereinbefore stated; that on a comparison of their signatures on genuine bills, with the signatures on the bills found in the prisoner's possession, they could discover no perceptible difference; and that their opinion against the genuineness of the bills was founded mainly upon the imperfectness and indistinctness of the engraved impressions on the face of the bills, which, in their opinion, showed them to be counterfeit. Upon this evidence, after identifying the bill offered by the prisoner to Pomroy & Gregory, and the other bills found in his boot, the court permitted them to be read in evidence and submitted to the jury. To these rulings of the court the prisoner severally objected—first, to the introduction of the bill offered to Pomroy & Gregory, and then to the introduction of the bills found in the prisoner's boot; which objections were severally overruled by the court, and the prisoner excepted.

"It was proved, that the prisoner was arrested in the city of Montgomery, about the 10th January, 1859; and that the Georgia Railroad and Banking Company was an incorporated bank, incorporated by the State of Georgia, and located at Augusta 'in that State, with power and authority under its charter to issue bills for circulation as money. Before entering on the trial, the prisoner had moved for a continuance of the case, and, in support of his motion, submitted an affidavit in the following words: 'The defendant expects to prove, by Andrew Johnson, Jesse Standford, and Benjamin Nelson, that they have known him since he was a small boy; that he has always borne a good character for honesty and integrity; that he is, and has been, living as a citizen in Franklin county, Alabama, since he was twelve years old; that he left his home in December last, and then had about two thousand dollars in money; that he was coming to South Alabama to get business, with the view of residing there; that he had been engaged in business in Franklin county, some-

times working on a farm, and in trading horses; and that they know he had worked for and obtained honestly the money with which he started from home.' In order to obtain a trial, the prosecuting attorney admitted, that the witnesses named in said affidavit, if present, would testify as therein stated; but reserved the right to object on the trial to the introduction of the evidence, or such parts thereof as he might deem illegal evidence; and the trial commenced with this understanding. When the prisoner offered to read the affidavit in evidence to the jury, the prosecuting attorney moved the court to exclude from the jury the words, '*and obtained honestly*'; which motion the court sustained, and the prisoner excepted.

" This being substantially all the evidence in the case, the prisoner asked the court to charge the jury, 'that if they believed from the evidence that the bank-bills in evidence were counterfeited or forged, yet they could not find that they were counterfeited in Montgomery county, from the facts that they were found in the prisoner's possession in that county, and that he attempted to pass one of them in that county.' The court refused to give this charge as asked, but gave it with this qualification: 'but, if the jury are satisfied from the evidence that the bill in question was forged or counterfeited by the prisoner, and that he had it in his possession, and attempted to pass it in Montgomery county, and there was no sufficient evidence to show that the bill was before that time seen, or held by him, in any other county, then it will be for the jury to say whether he forged or counterfeited the bill in Montgomery county.' The prisoner excepted, both to the refusal of the charge as asked, and to the qualification given."

WATTS, JUDGE & JACKSON, for the prisoner.—1. The indictment has not the requisites necessary to make it good at common law, and it is not in the form prescribed by the Code. The form given in the Code avers the corporate name of the bank, but the indictment in this case does not; nor can the court judicially know what the corporate name is. Neither does the Code authorize the

offense to be charged in the alternative: if it was doubtful which offense the evidence would establish, another count should have been added to the indictment.

2. The indictment was founded on section 3151 of the Code, and not on section 3154, nor on section 3165; consequently, all the evidence tending to show that the prisoner passed or attempted to pass the forged or counterfeit bill, was irrelevant and illegal, because it tended only to establish an offense different from that charged in the indictment.

3. All the other objections to the admissibility of evidence, as shown by the bill of exceptions, were well taken.

4. The charges to the jury present the main ground relied on for a reversal. It seems too clear a proposition for argument, that the bare possession of a counterfeit bill by the prisoner, with an attempt on his part to pass it in Montgomery county, is not sufficient evidence to authorize a conviction for the forgery or counterfeiting of it by him in that county. These facts, if true, might authorize a conviction for another offense, under section 3154, or under section 3165 of the Code; but certainly do not under section 3151. A prisoner cannot be convicted of two offenses, for one and the same act; and the test is, whether the same testimony will support both charges. State v. Johnson, 12 Ala. 840.

M. A. BALDWIN, Attorney-General, contra.—1. The indictment pursues the form prescribed by the Code, and, consequently, must be deemed sufficient.

2. Evidence showing that the prisoner, at the time of the alleged forgery, had other forged and counterfeit notes in his possession, is competent, to prove that the note was forged.—Commonwealth v. Miller, 3 Cushing, 243; Commonwealth v. Woodward, Thatcher's Crim. Cases, 47; United States v. Roundenbush, 1 Baldwin, 514; Same v. Doebler, ib. 519; Same v. Mitchell, ib. 366; State v. Antonio, 3 Brevard, 562; McCartney v. State, 3 Iredell, 353; Tharp v. State, 15 Ala. 749.

3. Hannon and Cook were competent witnesses as

experts, to prove the genuineness or spuriousness of the bank-bill alleged to have been counterfeited.—State v. Carr, 5 N. H. 367 ; Commonwealth v. Riley, Thatcher's Crim. Cases, 67 ; Commonwealth v. Smith, 6 Serg. & R. 568 ; Johnson v. State, 2 Carter, 652 ; State v. Chandler, 3 Hawks, 393; Farrington v. State, 10 Ohio, 354; May v. State, 14 Ohio, 461 ; State v. Harris, 5 Iredell, 287.

4. As to comparison of the signatures, see People v. Huett, 2 Parker's Crim. Cases, 20.

5. The place where a forged instrument is found or offered, is presumptive evidence that it was there forged, unless that presumption is repelled by some other fact in the case.—United States v. Britton, 2 Mason, 464 ; Bland v. People, 3 Scam. 364; Spencer's case, 2 Leigh, 751 ; State v. Morgan, 2 Dev. & Bat. 348.

A. J. WALKER, C. J.—The first count of the indictment is in exact conformity to the form prescribed by the Code, in the description and statement of the name of the corporation by which the bank-bill, alleged to have been forged or counterfeited, purported to have been issued.—Code, p. 703, form 39. The count is, therefore, not defective in that particular.—Lowenthal v. The State, 32 Ala. 589 ; People v. Stewart, 4 Mich. 656.

[2.] Counterfeiting and forgery of a bank-note, if not identical, are, at least, offenses of the same character, and subject to the same punishment; and a defendant may, under section 3506 of the Code, be charged, in the alternative, with the commission of either in the same count. Although the form above referred to may not contain the alternative charge of forgery or counterfeiting, yet that mode of allegation is expressly authorized by section 3506, and the form suggests no prohibition of that mode of allegation. We therefore cannot follow the statute, without tolerating such a mode of pleading in this case; and we must decide, that the objection on account of the alternative character of the charge is not well taken.

[3.] The possession of a large amount of counterfeit bank-bills, similar to that described in the indictment, and the defendant's conduct, evincing a desire to conceal

them, and a willingness to exhibit current bank-bills which he had, occurring within two or three hours after an attempt to pass the bill mentioned in the indictment, contributed to show the defendant's knowledge that the particular bill was a counterfeit, and that he had it in his possession for fraudulent purposes. Such evidence also had a bearing upon the question, whether the defendant was the guilty agent in the perpetration of the forgery. There was no error in its admission.—Tharp v. The State, 15 Ala. 749; Wharton's Am. Crim. Law, § 1457; State v. Van Hereten, 2 Penn. 526; State v. Houston, 1 Bailey, 300.

[4.] There was no impropriety in the admission of the evidence that the bills of the bank, counterfeits of which the defendant had in his possession, were current. Such evidence at least had a direct bearing upon the question of the fraudulent intent, which is an ingredient of the offense, and contributed to show a motive for the offense; and was, on that account, if for no other reason, admissible.

[5.] The two witnesses, Hannon and Cook, had been much engaged in handling the notes of the bank by which the note alleged to be a counterfeit purported to have been issued. One was the teller of a bank, and the other was engaged in the exchange business. One of them had remitted to the bank its notes, and corresponded with its cashier, and knew his signature. The other had frequently sent the genuine bills of the bank, which was located in Augusta, Georgia, to the agent of the institution of which he was teller, and those notes were placed to the credit of the institution of which he was teller. Both witnesses were acquainted with the genuine bills of the Georgia Railroad and Banking Company, and both had a knowledge of counterfeit bank-bills. There was no error in permitting these witnesses to give their opinions as to the genuineness of the bank-bill in question. Wharton's Am. Crim. Law, 1465; Martin v. Commonwealth, 2 Leigh, 745–749; Moore v. Commonwealth, ib. 701–706; Commonwealth v. Riley, Thatch. Crim. Cases, 67; May v. The State of Ohio, 14 Ohio, 461. The fact

that the verisimilitude of the signature was so perfect, that the forgery could not be detected by reference to the signature, was no reason why the witnesses, who were experts, should not be permitted to give their opinion as to the genuineness of the bills. Witnesses may form an admissible opinion " on that question entirely from the impression made by the plate on the face of the note, and by the general appearance of the note."—Johnson v. The State, 2 Carter's (Ind.) R. 652; Commonwealth v. Smith, 6 S. & R. 568; State v. Harris, 5 Iredell's Law, 287; Corbett v. State, 31 Ala. 329.

[6.] That the money which the defendant had when he left Franklin county was obtained honestly, was an inference to be drawn from other facts, and not a fact itself. It was, therefore, an appropriate question for the jury, upon proof of the facts, and not a matter to be testified to by a witness. Testimony that a conveyance, upon an issue of fraud *vel non*, was honestly obtained, would not be admissible; and that seems an analogous question to the one in hand. We are not sure that the manner in which the defendant obtained the money he had when he left Franklin county, was a matter at all material in this case; but, if it was, we approve the ruling of the court as to the admissibility of the statement, that he obtained it honestly.

[7.] If the forgery was established, the possession by the defendant of the counterfeited note in the county of Montgomery, together with the entire want of evidence of a prior possession elsewhere, was sufficient, in the absence of countervailing testimony, to authorize the inference by the jury that the forgery had been committed in Montgomery county. This position is sustained by the authorities we cite, and is altogether consonant with reason. United States v. Britton, 2 Mason, 464; State v. Morgan, 2 Dev. & Bat. 348; Spencer's case, 2 Leigh, 751. The act of forgery is done in secret. Direct testimony, as to the precise place where it is done, is rarely attainable. In a vast majority of cases, even when guilt was clear, it would reward the counterfeiter with an immunity from punishment to require positive and direct proof of the

venue. The place of the forgery is peculiarly, and in most cases exclusively, within the defendant's knowledge; and it is in his power to shield himself from a conviction in a wrong place, by proof of the true venue. It is, therefore, a matter of manifest justice and propriety to infer the forgery to have been committed at the place where the paper appears to have been first in the defendant's possession. The inference is by no means conclusive, and will give way to sufficient countervailing evidence. The inference is drawn upon the same principle, upon which it is presumed, where a larceny has been committed, that the person found shortly afterwards in the possession of the stolen goods is the guilty agent. There was no error in the refusal to give, without qualification, the charge asked, nor in the giving of the qualification to that charge.

Judgment affirmed.