# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1880.

### D. W. HEARD v. THE STATE.

1. PRACTICE — EVIDENCE. — The law does not prescribe the order in which testimony shall be introduced, but the practice is to admit competent evidence at any convenient stage of the trial; and though the materiality of the testimony may not appear when it is offered, it will be received on the assurance of counsel that it will be followed by other evidence connecting it with the issue to be tried. If it be not so connected, it will be withdrawn from the jury; but, when practicable, the better practice is to determine the materiality of evidence when offered.

2. EVIDENCE — HANDWRITING. — In criminal cases it is competent to prove handwriting by comparison, but the standard of comparison must be either an admitted signature or manuscript, or must be established by undoubted proof.

3. SAME. — This case is distinguished from *Phillips v. The State*, 6 Texas Ct. App. 364, and *Hatch v. The State*, 6 Texas Ct. App. 384, by the fact that in this case there is a well-attested standard of comparison.

4. EVIDENCE. — For the purpose of establishing the defendant's knowledge of the vicious character of a forged paper he is charged with uttering, it is competent for the State to show his contemporaneous connection with other papers of like vicious character.

5. EVIDENCE — PRACTICE. — Greater latitude is allowed in the introduction of evidence to establish guilty knowledge, than is permissible to establish issues in which knowledge and intent are not constituent elements.

6. PRINCIPAL OFFENDERS. — All persons who act together, with a common design, in the perpetration of a crime, are principal offenders; and when the offence is committed by the perpetration of different parts which constitute one entire whole, it is not necessary that the offenders should be in fact together at the perpetration of the offence, to render them all liable as principals, but any act done by either in pursuance of the common design inculpates all.

7. EVIDENCE. — Indictment against the appellant for uttering a forged deed alleged no conspiracy between him and one Y., but the evidence on the trial showed that, though widely separated, they concerted and coöperated in the transaction. *Held*, that though Y. was not under indictment,

Statement of the case.

his acts in pursuance of the common design were evidence against the appellant.

8. PRACTICE. — When a jury retires to consider of their verdict, they are entitled to take with them all evidence admitted in the case.

9. EVIDENCE — PRACTICE. — The general rule of evidence forbids the introduction of testimony tending to establish the commission of an offence distinct from the offence for which the party is being tried; but an exception obtains in cases where knowledge or intent are constituent elements of the offence for which the accused is being tried.

10. PRACTICE — CHARGE OF THE COURT. — It is not error to refuse a special charge, though correct in law, when the substance of it is embodied in the main charge of the court.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

By authority of the act of 1876, "to provide for the detection and conviction of all forgers of land-titles," the grand jury of Travis County, on June 19, 1879, presented against the appellant an indictment containing two counts. By the first count he was charged with having, on September 1, 1876, forged a deed to himself from one John R. Conner, purporting to convey three hundred and thirty-eight acres of land out of the Silvester Williams patented survey of seven hundred and thirty-eight acres, situated in the county of Collin. By the second count he was charged with having, on September 9, 1876, knowingly uttered and passed as true the said forged deed from Conner to himself, by causing the same to be recorded in the office of the county clerk of Collin County. No conspiracy or coöperation between the appellant and any other person was alleged in either count. In December, 1879, the cause came to trial, and the State abandoned the first count in the indictment. A trial ensued on the second count, resulting in the conviction of the appellant and the assessment of his punishment at confinement in the penitentiary for the term of two years.

The evidence in the record is very elaborate, consisting largely of expert testimony on the handwriting of various

deeds and documents, and comprising about sixty letters of the appellant, dated in 1875 and 1876. With very few exceptions, these letters were written at San Antonio, where the appellant lived and conducted a land-agency business, and were addressed to one M. M. Young, at St. Louis, New Orleans, and sundry towns in Texas. These letters related to various other land-transactions of a speculative character, besides the one on which this prosecution was based.

C. L. Pyron died in August, 1869, the owner (according to the Collin County record of deeds) of the Silvester Williams tract of land, which had been conveyed to him in 1844, and before his marriage. In 1868 he went into bankruptcy, and filed his schedules in the bankrupt court; but they contained no mention of this land. In 1875, his widow, who lived near the appellant in San Antonio, received a letter from one W. S. Cox, informing her that there was such a tract of land in Collin County, belonging, apparently, to the heirs or estate of her deceased husband. She took the letter to the appellant, and engaged his services to do whatever was needful to assert whatever rights she and her children had in the land. Danger that Pyron's creditors, if they should hear of the land, might subject it as assets of his estate, was apprehended. The appellant, in a letter dated March 30, 1875, wrote to M. M. Young, at Bremond, Texas, briefly informing him of the condition of the land and suggesting that he investigate the matter. The most of the letter relates to other land-transactions, and implies a previous correspondence between Young and the appellant. During the ensuing year and a half the appellant wrote many letters to Young, relating in part to this land, and having for their object such an adjustment of the matter as would secure the land against reclamation by Pyron's creditors, and for the benefit of his widow and children, and their agents, Young and the appellant. It was agreed that these latter should have three hundred and thirty-eight acres of the land for their outlays and services. In the

course of the correspondence between the appellant and
Young, the latter called for a genuine signature of C. L.
Pyron. The appellant applied to Mrs. Pyron for such a
signature, informing her that it was needed by Young to
compare with other signatures of Pyron. She furnished
him a signature written by Pyron in the family Bible, in the
year 1852, which was the only signature of her husband's
in her possession. The appellant forwarded the signature
to Young at St. Louis, by letter dated August 27, 1875.
Some months afterwards it was returned to Mrs. Pyron by
the appellant.

After many and urgent appeals by Heard to Young to
expedite the Pyron business, the former wrote, on June 4,
1876: "I note you say you have closed the Pyron case up.
I am very glad to hear so." The further correspondence
and developments show that Young " closed the Pyron
case up " by producing a " chain of title," consisting of a
deed from Pyron to A. P. Thompson, dated August 2, 1867,
followed by a deed from Thompson to John R. Conner,
dated July 11, 1868, for the entire tract of seven hundred
and thirty-eight acres, and completed the job by a deed
from Conner to Mrs. Pyron for four hundred acres, dated
July 29, 1876, and a deed from Conner to D. W. Heard,
the appellant, for the remaining three hundred and thirty-
eight acres, dated August 15, 1876. This last deed is the
document on which this prosecution is based. It described
Conner as " of the State of Illinois, at present tempora-
rily in the State of Missouri," expressed a consideration of
$850 paid to Conner by Heard, and purported to have been
witnessed by " T. Sullivan," and to have been acknowl-
edged by Conner, on the day of its date, before " S. J.
Levi, notary-public, St. Louis County, Missouri."

J. Barry Strong was introduced as a witness for the State
with regard to this instrument. He stated that he knew M.
M. Young, and had met him at various places in Texas and
in Missouri. Young's home was at St. Clair, Franklin

Conuty, Missouri; he was an operator in lands, and was known as a "land-shark." Witness also knew James Reed, whose home was in Philadelphia, and had seen Reed write, and knew his handwriting. "Reed's business," said the witness, "was to get up titles for Young; he did his work for him. James Reed was a land-shark, and was associated with M. M. Young in making fraudulent land-titles. I saw Reed in Chicago in 1875. He was then making titles for Young. He had a lot of blank deeds, like the form of the deed from J. R. Conner to D. W. Heard, with blank acknowledgments signed by S. J. Levi, with his seal attached. I did not know S. J. Levi personally, but know of him, and do know that Reed made use of his blank certificates in making titles for Young." The purported deed from Conner to the appellant being shown to the witness, he stated that the "filling in" — the written portions of it — and the signatures, except Levi's, were in the handwriting of Reed.

On his cross-examination, this witness acknowledged that he was himself under charges of land-forgery, had "turned State's evidence" in this case, and was brought from jail to testify.

By several witnesses who had known A. P. Thompson, for many years a prominent lawyer in Houston, Texas, the State proved that the signature to the purported deed from him to Conner was not made by him. He died about the year 1872. In short, it may be stated that the prosecution succeeded, partly by direct and partly by expert testimony, in showing that the "chain of title" furnished by Young, and containing the several links from Pyron to the appellant, was a fabrication and John R. Conner a myth. Thompson, however, was a man who for many years had been well and widely known, and his signature had been sufficiently well imitated to impose upon unsuspecting parties.

The defence took its real stand upon the issue of *scienter*, insisting that the evidence failed to show that the appellant was apprised of the forged character of the deeds produced

by Young. Many witnesses who had long and well known his reputation in San Antonio testified to the high character for integrity he had uniformly maintained, and, according to some of them, it was so firmly established that this prosecution had not impaired it among the people to whom he and his dealings were best known. His numerous communications to Young evinced a strong solicitude for the interest of Mrs. Pyron, but were replete with expressions capable of a construction to his prejudice. Young, it appears, had died at some time prior to the indictment of the appellant, and J. E. Lucy, a detective, obtained from his widow the letters to him from Heard, introduced by the State. Mrs. Young gave the detective an order on Heard for such other papers in relation to the matter as he had, and the attorney-general of the State also gave the detective a written application to Heard for any such papers. Lucy, the detective, was introduced as a witness for the State, and testified that on presenting his credentials to Heard, at his office in San Antonio, the latter delivered to him the purported deeds from Pyron to Thompson, the latter to Conner, and Conner to Heard. Witness informed Heard that the attorney-general wanted them because it was suspected that they were forgeries.

To the so-called deed from Thompson to Conner there appeared a certificate of acknowledgment over the name of Sterling Fisher, clerk of the County Court of Harris County, by Brad Hancock, deputy, and dated July 11, 1868. Fisher was introduced as a witness for the State, and testified that in July, 1868, he was clerk as aforesaid, and Brad Hancock was his deputy, but that his official signature to the certificate of acknowledgment was not in the handwriting of either of them; nor did he think that the signature to the body of the deed was in the handwriting of A. P. Thompson, with which the witness was well acquainted. And he further stated that the official seal which appeared to the certificate of acknowledgment was not the impression of the seal of

his office in July, 1868. On the cross-examination of this witness, he stated that when the document was first submitted to him for inspection, he thought that the signature of Thompson and his own official signature were genuine.

The foregoing statement attempts no more than such an outline of the proofs as suffices to elucidate the rulings of this court. A detail of the evidence is not practicable within reasonable space. After the rendition of the opinion, a motion for a rehearing was pressed with great force, but was overruled.

*Hancock, West & North*, for the appellant. There is no doubt but that in cases like the present one, for the purpose (and none other) of proving a guilty knowledge by the appellant, proof that he had, at and about the time charged, uttered or had in his possession other forged deeds, would be admissible. See *Francis* v. *The State*, 7 Texas Ct. App. 501. This rule itself is said by Lord Campbell to be at least an apparent, if not a real departure from the general principle that the evidence must be confined to the point at issue, and its admissibility can only be defended on the ground that it is competent, for the purpose of proving the corrupt *scienter*, to bring home in this manner guilty knowledge to the defendant. If this be so, then it certainly was highly irregular and most unjust to the appellant to permit the State to introduce a vast amount of evidence of this character, for the purpose of proving the *guilty* intent with which the alleged act was done, without first making the slightest effort to prove that the act itself was ever committed.

Greenleaf (vol. 3, sect. 19), in commenting on this question, lays down what would seem to be the correct rule, in the following guarded language : —

" It may be observed, that though, in the proof of *criminal intent* or *guilty knowledge*, any *other acts* of the party *contemporaneous* with the principal transaction may be given

in evidence, such as the recent possession of other forged notes or bills, or of implements for counterfeiting, or other instruments adapted to the commission of the crime charged, or the assumption of different names, and the like; yet such evidence, *regularly*, ought not to be introduced until the principal fact constituting the *corpus delicti* has been established.''

And this is about the length to which our courts have gone. *Satterwhite* v. *The State*, 6 Texas Ct. App. 613.

In *Galbraith* v. *The State*, 41 Texas, 569, our Supreme Court does not carry the rule as far as Greenleaf; for in that case, the defendant being indicted for theft of a blue dun bull, the State was allowed below to prove that at about the same time he stole a steer from another person; and the Supreme Court held this to be error.

In Roscoe's Criminal Evidence (Am. ed. 1852, marg. p. 91), Judge Sharswood, the American editor, cites with approval, in a note, *Jones' Case* (6 Rogers Rec. 86), to the effect that the proof of the *scienter* in the manner attempted here is not admissible *before* the principal charge is established.

This latter case is not accessible to us, but we quote it on the high authority of Judge Sharswood.

We do not believe that any adjudicated case can be found where, under similar circumstances, the action of the court below in this particular would be upheld.

The authorities show that, not only is it in a limited class of cases in which such evidence is at all admissible for the purpose of proving the *scienter*, identity, etc., but they show, further, that its admission is closely scrutinized. As the Court of Appeals of New York says: ''*The general rule is against receiving evidence of another offence.* A person cannot be convicted of one offence upon proof that he committed another, however persuasive in a moral point of view such evidence may be.'' *Coleman* v. *The People*, 55 N. Y. 81 (15 Am. Rep. 429).

In *Regina* v. *Bleasdale*, 2 Car. & Kir. 765, Lord Campbell says : " With regard to the admission in evidence of proof of previous utterings, upon indictments for issuing forged notes, I have always thought that the decisions go a great way ; and I am by no means inclined to apply them to the criminal law generally."

In *The People* v. *Corbin*, 56 N. Y. 363 (15 Am. Rep. 428), it is said that " the cases in which offences other than those charged in the indictment may be proved, for the purpose of showing guilty knowledge or intent, are very few."

But in no case will it be found that such evidence was allowed to go to the jury until the principal fact in the case has been proved, the *corpus delicti* established.

It is no answer to this to say that this was a mere irregularity, an immaterial change in the order of evidence, or that the evidence was not itself illegal.

Waiving for the present the question as to whether this evidence was at all admissible in the case at bar, we believe that the action of the court in permitting the introduction of this evidence at that stage of the case was contrary to rule and authority, and had a tendency to, and no doubt did, prejudice appellant's case with the jury.

The reason of the rule requiring the main fact to be established first, is to prevent the State from resorting to proof of other offences for the purpose of showing that a defendant committed the offence charged. The authorities are uniform to the effect that such evidence is not competent to prove that a defendant committed the alleged fact. Hence its introduction for the purpose of showing *scienter* is prohibited until the main fact is established by competent evidence. The fact must be proved first, and then it may be shown by whom it was committed.

In the case at bar the rule was reversed, and this evidence of other acts, persons, papers, etc., by being introduced out of its order, and before proof of any act charged, was in fact practically used to prove, not the guilty knowledge, — for which alone it was admissible at the proper time, — but to

swell the volume of the evidence as to the perpetration of the act charged by the defendant.

The case at bar is an indictment found under the land-forgery act of 1876, and this court, in *Ham* v. *The State*, 4 Texas Ct. App. 645, has called attention to. the excited state of the public mind in reference to this class of offences.

In addition, this is a case depending almost, if not entirely, on circumstantial evidence; the crime is a grave one, and a conviction would render the appellant infamous, deprive him of his liberty, and consign him to hard penal servitude. In such cases the greatest caution should be used in the introduction of evidence, the long-established forms of law should be observed, and the usual and natural order of evidence should be preserved.

In *Myers* v. *The State*, 6 Texas Ct. App. 19, the proper rule is laid down by this court. There, as in the case at bar, the judge permitted incompetent evidence to go to the jury, and remarked that he would control that evidence in his written charge. Here the judge attempted to control it by mere verbal remarks from the bench.

Of this procedure this court says, in the case last cited: "It is of doubtful expediency, to say the least of it, to admit improper evidence to go to the jury and depend upon controlling it in the charge, especially so in an exciting criminal trial." That case was reversed and remanded for a new trial.

The appellant was not indicted jointly with any one, nor was he charged with having committed the offence in conjunction with any one. The charge is merely that he, and he alone, committed the act. This being the case, the attempt to show that some third person did the act, or that there was a conspiracy between the appellant and some third person, was erroneous; there was a variance between the *allegata* and the *probata*. It was no proof of the charge that the appellant alone, and without any agreement with

any one, committed a certain act, to offer evidence that he did it by means of a conspiracy between himself and others.

The object of the averments in an indictment — and their principal object — is to notify a defendant of what he is charged. To charge that he committed the offence, and then attempt, without further allegations, to show that another person did it, whose acts, by reason of the operation of some principle of law, are to be imputed to the defendant, is simply to set a snare for the unwary and make a mummery of justice.

The whole theory of the prosecution seems to have been, that proof of the guilt of M. M. Young would establish the guilt of the appellant; and it will be found that throughout this whole case· nearly all the evidence seems to be aimed at Young, instead of at the appellant. At the same time, no privity is charged between the appellant and Young, or anybody else.

While there is no doubt but what, in a proper case and with appropriate averments, the declarations and acts of one conspirator can be used against his co-defendant, whether both were present together at the time or not, no adjudicated case was cited by the State below, and we have been unable to find any that goes so far as to say, that where an act is charged as having been done without any conspiracy, but by one person singly, proof of a conspiracy, and of acts of another party than the one charged, could be introduced against the person on trial.

The object of the pleadings is to inform the defendant of what he is charged, so that he can prepare to meet the evidence which may be offered against him under the pleadings. In the case at bar, the allegations of the indictment do not inform the appellant that the State intended to show his guilt by showing Young's guilt and a conspiracy between them.

In *Myers* v. *The State*, 6 Texas Ct. App. 12, heretofore cited, the defendant was indicted *alone* for the

murder of Mrs. Hester, and an effort was made on the trial to show a conspiracy between the defendant and one Sam Myers to commit the crime, and a good deal of time was consumed in showing, not the acts and declarations of Thomas Myers, who was alone indicted and on trial, but the acts and declarations of Sam Myers, who was not charged with the crime, nor on trial.

In reviewing this subject, the court in that case lays down what we believe to be the correct rule, and one which is strikingly applicable to the case at bar.

The deed from Conner to Heard was objected to because there was no competent proof that it was in fact a forgery, or that the defendant had forged it, or was connected with its forgery, or knew it to be forged; and because the proof showed that, if forged, it was forged by Young or others, and not by appellant, and there was no conspiracy charged between defendant and Young.

It is apparent, from the order in which the prosecution insisted on presenting its evidence, that their scarcely concealed purpose, unless prevented by the court, was to use evidence of other forgeries and utterings for the purpose of proving the uttering charged, and not for the only legitimate purpose for which such evidence would be admissible at all, viz. : to show, *after* ( and not before ) proof of the main fact, a guilty knowledge or a felonious intent on the part of the appellant at the time of the act charged.

Except upon the theory that the appellant would be held criminally responsible for the acts of Young, even though they were not jointly indicted, this evidence was clearly inadmissible; and even upon that theory, we submit with great confidence that this deed should have been excluded, because, assuming it to have been a forgery ( and the weight of the evidence would seem to show this), whoever forged it, it is certain that it was not forged by the appellant; and it is equally clear there could be no conspiracy between himself and Young, or any other person, as to forging or utter-

ing this deed, for the evidence discloses that the appellant himself purchased half of this land for value, and subsequently sold it, giving his warranty for the title.

The charge of the court is in the main a correct *résumé* of the statutory provisions of the Code in relation to the offences of forgery and uttering of forged instruments, and in many respects is not unfavorable to the appellant.

No bill of exception was taken to the charge, because art. 680, Code of Criminal Procedure, provides that the charge of the court is a part of the record, while art. 1362, Revised Statutes, provides that where the action of the court appears of record, a bill of exceptions is not necessary. Art. 677, Code of Criminal Procedure, also provides that in felony cases it is the duty of the court, whether requested to do so or not, to charge the law applicable to the case.

Although no formal bill was taken to this charge, the record shows that it was objected to because the questions involved had already in a great measure been presented by the bills of exception.

Experience also teaches that unless expressly required by law, it injures a defendant to object to the charge before the jury. Such formal objections are equivalent, in the eyes of the jury, to a confession that the charge is unfavorable and prejudicial to him.

Besides, no matter how vigilant and watchful counsel may be, or how familiar they may have made themselves with all the aspects of the law bearing on the case, yet it is impossible in every case, on the spur of the moment, to detect the fatal vice which may be found in a charge carefully prepared by an experienced judge, but hurriedly read to the jury.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. The indictment presented against the appellant contains two separate and distinct counts. The

first count charges the appellant with the forgery of a deed from one John R. Conner to the defendant for three hundred and thirty-eight acres of land in Collin County, setting out at length the deed alleged to have been forged. The second count in the indictment charges that the defendant, on September 9, 1876, in Collin County, Texas, unlawfully, wilfully, and without lawful authority, and with intent to defraud, did knowingly "utter, publish, use, and pass as true and genuine," the false and forged deed from Conner to himself, set out in the first count, by causing to be placed on record, in the office of the clerk of the County Court of Collin County, the said forged deed, knowing it to be a forgery. On the trial, the count for forging the deed was abandoned, the prosecution having elected to try on the count for uttering and passing, and causing to be filed and recorded, as true and genuine, the forged deed, knowing it to be false and forged; which is the second count in the indictment. The result of the trial was a verdict of guilty, the punishment being assessed at two years' confinement in the penitentiary.

The several errors complained of as having been committed on the trial below, and which are urged here as cause for the reversal of the judgment of the court below, may be appropriately considered in the order presented in the brief of counsel for the appellant, as follows: First, the rulings of the court on the admission of evidence, as presented by nine bills of exception saved by the appellant; second, the alleged errors in the charge of the court; and, third, the erroneous action of the jury in finding a verdict of guilty, and of the court in refusing to set this verdict aside. The first subdivision of the subject, embracing, as it does, the several bills of exception set out in the record, each one calling in question the action of the court, either as to the manner of admitting evidence or as to the matter admitted in evidence against the accused, constitutes the gravest and most important features of this trial.

The first two bills of exception, which are presented together by the appellant's counsel, set out that before the State had offered in evidence or read to the jury the alleged forged deed from Conner to the defendant, and before the State had offered evidence to show that the deed alleged to be a forgery had been filed for record or recorded in the office of the county clerk of Collin County, the State was permitted, over objection by the defendant's counsel, to interrogate several witnesses as to the hand-writing, existence, and custody of other instruments than the one set out in the indictment, and other circumstances connected therewith ; it being objected, as each witness was offered, that such evidence was premature, and offered out of its legal and regular order, and was irrelevant, there being no evidence introduced tending to show that the deed with the uttering of which the defendant was accused ever existed, or that it was in fact a forgery, or that it had ever been uttered by the defendant, or by any other person ; and because the admission of this testimony was calculated to forestall and prejudice the cause of the defendant in the minds of the jury ; and because the parties testified to by these witnesses were not charged in the indictment to have acted in concert or conspiracy with the defendant.

The precise question raised by these two bills of exception is this : Was the State, in this case, required by the rules of law to commence the introduction of evidence at any particular point, in proving the chain of facts necessary to establish the defendant's guilt? It is not contended, in this connection, that the testimony would not have been admissible if it had followed, rather than preceded, testimony that the deed from Conner to the defendant, and with the utterance of which the defendant was charged, was a forgery, and after testimony as to the utterance had been introduced, or proof of an acting with others had been admitted.

We are not aware of any rule of law, or any adjudicated

case under the Texas Codes, which requires that a party to any judicial proceeding shall commence his evidence at any particular part of the chain of facts by which the suit is to be maintained or the cause defended, or where sufficient importance has been attached to the subject to require the reversal of a judgment when the trial court has not confined the party, in the introduction of evidence, to any particular rule. In practice, so far as our reading and observations have gone, the rule seems to be to admit legal and competent evidence at any convenient stage of the trial; and although the relevancy of the testimony may not at first be apparent, yet, if counsel propose to connect it with other testimony, it is usual to receive it on the assurance of counsel that it will be so connected. The consequence of a failure to do so ordinarily is that the testimony is excluded from the jury, or, in the language of Mr. Greenleaf, it is to be "laid out of the case." In treating of this subject, Mr. Greenleaf uses this language: "Nor is it necessary that its relevancy should appear at the time when it [the testimony] is offered, it being the usual course to receive at any proper and convenient stage of the trial, in the discretion of the judge, any evidence which the counsel shows will be rendered material by other evidence, which he undertakes to produce. If it is not subsequently thus connected with the issue, it is to be laid out of the case." To attempt to lay down a more stringent rule of practice would often tend to embarrass counsel and hinder the expeditious disposal of the business of the courts. It would doubtless be more systematic to require counsel, in the production of evidence, to commence at one or the other end of the chain of facts intended to be proved on the trial, and, having thus begun, to connect the entire chain of facts consecutively through to the other end of the chain of facts. And whilst, as stated by Mr. Greenleaf and cited by appellant's counsel, proof of contemporaneous transactions, in order to prove guilty knowledge, "regularly ought not to be introduced until the

principal fact constituting the *corpus delicti* has been established," — and this would be, perhaps, a convenient rule of practice, — still, we are of opinion that to give it the force here contended for would be an unwarranted innovation upon the rules of practice which have uniformly obtained in this country, so far as we are advised by reference to the decisions of courts of last resort.

The ground of complaint in the third bill of exceptions is that two witnesses, Fisher and Spence, were permitted, over objection, to testify as experts to the genuineness of the deeds, and the signatures thereto, from C. L. Pyron to A. P. Thompson, and from A. P. Thompson to J. R. Conner; the ground of objection, as stated in the bill of exceptions, being that the witnesses did not know the handwriting of the defendant, Heard, nor that of M. M. Young (which latter person other witnesses had connected with the defendant), nor those of C. L. Pyron and A. P. Thompson (the names of the last two purporting to be signed to the two deeds offered in evidence), nor that of Sterling Fisher, nor of Brad Hancock, nor of W. H. Miller, nor of Alf Moore; and having given evidence as to their means and opportunities of becoming judges of handwriting, they then proceeded to detail to the jury at length their reasons for believing the deeds from Pyron to Thompson and from Thompson to Conner were forgeries, when the said witnesses had by their own testimony disqualified themselves from testifying as to said handwritings, because there was no specimen of the handwriting of either Pyron or Thompson, or of the other persons, Sterling Fisher and others named above, that were admitted to be genuine; and because there was no standard of comparison before the jury; and because it was the duty of the court, and not of the witnesses or the jury, to determine whether the witnesses were experts or not; and because said evidence was premature, illegal, and incompetent for the purposes intended, under the state of the case, and calculated to prejudice the defendant's case and to confuse

and mislead the jury. These are the grounds of objection to the testimony.

Counsel say, in their brief for appellant: " These are the same two witnesses, it will be remembered, whose evidence in *Phillips* v. *The State*, 6 Texas Ct. App. 331, was decided by this court to have been improperly admitted, under practically the same circumstances as detailed in the bill under consideration ; " and we are referred to *Phillips' Case*, *Hatch's Case* ( 6 Texas Ct. App. 384), and to *Eborn* v. *Zimpleman* ( 47 Texas, 503), in support of their argument. What was decided by this court in Phillips' and in Hatch's cases was to the effect that a signature offered as a standard of comparison cannot be proved to be a genuine signature merely by the opinion of a witness that it is so, such opinion being derived solely from the witness's general knowledge of the handwriting of the person whose signature it purports to be, but must be admitted or established by proof to be genuine. In other words, in proving an instrument or signature by a comparison of handwriting, there must be in proof an admitted or proved standard of comparison as a starting-point. These decisions are based upon and are believed to harmonize with *Eborn* v. *Zimpleman*, 47 Texas, 503, cited by appellant's counsel, where other authorities are also cited as bearing on the subject. In *Eborn* v. *Zimpleman*, the opinion rests, in part at least, upon the case of *The Commonwealth* v. *Eastman*, 1 Cush. 217, from which an extract is embodied in the opinion, and Eastman's case is cited by this court in Phillips' case. So that the decisions in both *Phillips' Case* and *Eborn* v. *Zimpleman* rest, in part at least, on that of *Eastman* ( 1 Cush. 217), in so far as the precise question now under consideration is concerned. On a careful examination of each and all of these cases, it will be found that they make no decided ruling as to what may be testified to by experts proper, or as to the value of their opinions when given in evidence, except inferentially ; but, on the contrary, these cases all have more immediate reference to proof by comparison of handwritings.

The doctrine announced by this court in the cases of Phillips and of Hatch is, that when it is sought to establish the genuineness or the falsity of a writing or a signature by comparison of handwritings, there must be a standard of comparison established, either by the production of a writing or signature admitted to be a genuine specimen, or by establishing by clear and indisputable evidence such a standard of comparison. These precise facts should be borne in mind in determining the exact scope and meaning of these cases, and their application to the questions now under consideration. As to the value of the opinions of experts as such, and the weight to be attached to their testimony in determining the genuineness, or otherwise, of a writing offered in evidence, we derive but little aid from adjudicated cases by Texas courts. It is sufficient for a decision of the question presented by this bill of exceptions to say that, independent of the question of experts, there were in evidence proper standards of comparison of the signature of Pyron and the handwriting of Young, and proof direct that the signature of Pyron to the deed to Thompson, and that of Thompson in the deed to Conner, were forgeries. The court held that the two witnesses had on their examination proved themselves qualified to testify as experts, by permitting their opinions to go to the jury as such. The evidence thus elicited was cumulative of other testimony adduced, and to the extent that their testimony was solely the opinions of the witnesses as experts, based on large experience and varied opportunities, where their duties required of them much care and scrutiny in examining, studying, and comparing the handwriting and the peculiarities of a large number of signatures, upon which they were required in responsible official capacity to act, we are of opinion they showed themselves experts, competent under the law to express their opinions as to the matters to which they testified, as set out in the statement of facts, and that the court did not err in overruling the defendant's objections to its admissibility.

*Johnson* v. *The State*, 35 Ala. 370 ; 1 Greenl. on Ev., sect. 440, and note 2.

As to the admissibility of this character of evidence for the purpose of establishing guilty knowledge of the defendant that the particular deed which he is accused of uttering was not genuine, see *Francis* v. *The State*, 7 Texas Ct. App. 502, and authorities there cited. Further light is thrown upon this subject by the case of *Rex* v. *Wylie*, (New Rep. 91), decided at the Old Bailey in 1804, where, on an indictment for disposing of and putting away a forged bank-note, knowing it to be forged, the prosecutor was permitted to give evidence of other forged notes having been uttered by the prisoner, in order to prove his knowledge of the forgery ; and in the remarks of Lord Ellenborough and others, in deciding the case, the older adjudications were referred to, and it was said the question presented was " not new." These remarks will apply as well to other questions as to those embraced in this bill of exceptions. In deciding upon a question of evidence, as to its bearing on the affirmance or reversal of a judgment, we are required to look to the whole evidence, rather than to the order of its introduction, in order to determine its value and effect. As to the testimony objected to, as set out in bill of exceptions No. 4, when considered with reference to the qualification appended to the bill by the judge, we deem the error committed, if indeed any was committed, as being wholly unimportant, when considered with reference to the whole aspect of the case as it then stood before the court.

Bill of exceptions No. 5 discloses the fact that certain evidence concerning à box of papers purporting to have been received from the widow of M. M. Young, after the death of Young, was admitted over objection by the defendant, but was subsequently excluded from the jury. One objection urged to this testimony is the danger that the improper testimony would find a lodgment in the minds of the jury to such an extent as not to be effaced by its withdrawal

afterward by the court. We are of opinion, as we have heretofore intimated, that in practice the court should generally decide upon the admissibility of evidence when offered, if objected to, rather than resort to the remedy of undertaking to control the effect of incompetent evidence by the charge to the jury; and, as was said in *Myers* v. *The State*, 6 Texas Ct. App. 1, we still deem that "it is of doubtful expediency, to say the least of it, to admit improper evidence to the jury and depend upon controlling it by a charge." Such intimations as this are not infrequently made, and are addressed to the trial judges, to guard them against such rulings as may seem prejudicial to the rights of a person on trial; and a case might arise where a disregard of these rights would cause a conviction to be set aside. But it not infrequently occurs that the case has not been so far developed that the court can determine, at the time the evidence is offered, whether it is admissible or not. Whether it is so, or not, often depends upon further developments, connecting it with the case by other and further testimony; and this is likely to be the case in an investigation of a subject like the present, where, in order to prove the guilty knowledge of the accused, a corresponding latitude must necessarily be permitted.

In the present case, as developed in the record before us, we are not prepared to say that any material error was committed; certainly not such as calls for a reversal of the judgment, employing this as a factor. From the abundance of the evidence showing the intimate relations existing between the defendant and the man Young, and having relation to the particular title in question, we are not prepared to say that the evidence is not irresistible that the evidence contained in the box of papers obtained from his widow after his death was not, in fact, in the possession and care of a co-conspirator whilst the conspiracy was pending. This remark will apply with the same force to the deeds obtained by the defendant from the widow of Young, after his

death, as to the papers mentioned in this bill of exceptions. There can be no doubt, from the testimony, that at the very time the deed for the utterance of which the defendant is prosecuted was being obtained, the relations between the defendant and Young, and Young and Reed, mentioned in bill of exceptions No. 6, were of so intimate and confidential a character as to render them jointly liable, each for the acts and declarations of the other; and whether these land-transactions, which were largely in common, were criminal or not, was a question for the determination of the jury under the proofs adduced. As to the testimony of Strong, the question of his credibility was one for the jury, and not the court, it not being shown that he was incompetent.

The seventh bill of exceptions calls in question the correctness of the rulings of the court in admitting evidence of facts which, being isolated, related to and tended to implicate other persons, and among them the man Young, and having no direct reference to the defendent; the ground of objection being that the defendant was alone indicted, and there being no averment that the defendant acted in concert with any other person in uttering the forged paper, nor any charge of conspiracy between the defendant and Young, or any other person, to commit the crime charged. We have a statute, peculiar in some respects, relating to principals in the perpetration of crime, and which, it is believed, makes material innovations upon the common law with regard to the law of conspiracy, which is still itself an indictable offence. It is declared, among other things, that " all persons are principals who are guilty of acting together in the commission of an offence." Penal Code, art. 74. Various examples are given in succeeding articles of the Code ( arts. 75–78) as to what connection with the offence committed, or the actual perpetrator, will constitute one a principal offender in the particular transaction. Under this article of the Code, and even at the common law, it is not required that the different parties to the per-

petration of crime should be in fact together when the thing is done, to constitute them principals in the offence; and especially when the act or thing is composed of different parts, all uniting in one whole transaction. If there be a common object in view, in which the mind of each participant concurs, any act done in pursuance of the common design, and while it still is in existence, and which would, at common law, constitute such offender a co-conspirator, would, under the statute, render him a principal offender, and subject him to be prosecuted as a principal. So here, if there was a mutual agreement and understanding between the defendant and Young, or between the defendant and any other person, or any number of persons, to put on record a forged deed to a particular tract of land in Collin County, and, in order to consummate the common object, any act done by such other person in pursuance of the common design, and with knowledge of the common design, or with knowledge of the guilty intent of the defendant, would render such other person a principal offender, no matter where or how widely they were separated from each other. If one were at New York, another at New Orleans or St. Louis, and the defendant at San Antonio, when the part to be performed by each was performed, each would be a principal, and his acts would be as binding on all the others as if they had all been present in the most private retreat on earth. We are not aware of any rule of law or practice which requires, either that all the principals shall be indicted together, or that it is necessary that the person connected by the evidence with the one indicted should himself be under indictment, in order to admit proof of his participation in the perpetration of the act for which the one on trial may be charged.

As to the matters complained of in the seventh and succeeding bills of exception, the questions raised are so nearly the same in principle to others discussed at length, that we deem it unnecessary to do more than to refer to what we

have already said as to the evidence of, the contents of the
box of papers obtained from the widow of Young after his
death, and other proof obtained from the same source.   The
jury were entitled to take with them in their retirement,
and to. consider all the testimony admissible under the law,
voluminous though it be, in order to arrive at a proper con-
clusion in forming their verdict.   Code Cr. Proc., art. 693.
The jury must be presumed competent to grapple with sub-
jects of this nature, complicated though they be, under
appropriate instructions from the court as to the mode of
applying the facts to the law of the case.   Much of this mass
of testimony would have been inadmissible but for the latitude
allowed in searching after the knowledge of the defendant.
that the deed he is charged to have uttered was a forgery.
If this be wrong, then the law is wrong, and should be
changed.

Whilst it is true, as argued by the appellant's counsel,
that a person cannot be convicted of one offence on proof of
having committed another, and that the general rule is
against receiving evidence of other offences, and that the
authorities show that such testimony is admissible in but a
limited class of cases, all of which positions are to some
extent supported by authorities they cite, it is equally true
that the case under consideration belongs to the very class
which forms the exception to the general rules which ordi-
narily obtain in the production of evidence.   It may be
proper to state, further, that there is a clear and manifest
distinction between the present case and that of Myers v.
The State, 6 Texas Ct. App. 1, cited by counsel.   It may
be possible that among this large amount of testimony some
slight error may have crept in.   If so, we have failed to de-
tect it in our earnest endeavor to so separate the grain from
the chaff that we might see clearly the portions having per-
tinent bearing upon the subject under investigation, but
without having discovered any material departure from well-
established authority.

We come now to a consideration of the charge of the court, in the order of argument.    After the judge had delivered to the jury his general charge at length, counsel for the defendant asked the court to give to the jury certain additional instructions, which were given by the court as asked by the counsel.    Counsel then requested the court to give a special charge on the subject of circumstantial evidence, which the court refused to give, stating, as the reason for his refusal, that it was "refused because given in the main charge, in substance and effect."    This court holds the opinion that in cases dependent entirely upon circumstantial evidence, the judge should give to the jury, in some appropriate language, an instruction as to the conclusiveness of this character of testimony, and the certainty to which it must go in order to warrant a conviction upon it alone.    On looking into the general charge of the court, however, it is found that the record verifies the statement of the judge in refusing the special instruction asked, to wit: that it is given in the main charge, in substance and effect.    The judge having once given to the jury an instruction deemed sufficient, he was not required to repeat it, and did not err in refusing the charge asked.

It would extend this opinion beyond reasonable length, and be also a useless consumption of time, to consider at length the various objections to the charge urged in argument; hence this will not be attempted, but some of the apparently most important features will be briefly considered.    It is objected, as in the admission of the evidence, that the charge erroneously permitted the jury to consider whether any person other than the defendant participated in the preparation of the deed uttered by the defendant; in other words, that the charge on principal offenders was erroneous.    In addition to what we have already said, we need do no more than add that the charge embraces substantially the statute relating to principal offenders, already cited.    The testimony having been properly admitted, as we

have seen, it was the duty of the court to instruct the jury as to its application. It is also urged that, inasmuch as the defendant had introduced evidence of previous good character, the jury should have been instructed as to the effect of such testimony. The judge, by admitting the evidence to the jury, authorized them to consider it; to have done more would have been to invade the province of the jury, who are by law the exclusive judges of the weight to be given to the testimony. It was beyond the power of the court to tell the jury how much weight they should attach to the evidence of good character. Again : it is argued that the charge is liable to the same objection found to the charge in Francis' case, already referred to. In that case the court charged a certain section of the Land-Forgery Act, without making any application of the law to the facts of the case. This was deemed erroneous, not only because of a want of application, but because it allowed too great latitude to the jury, and did not prevent them from basing a verdict upon proof of any one fact which tended to show the guilty knowledge of the defendant. This case is in several respects unlike that of Francis. In the first place, the charge in Francis' case, as well as that in *Marshall's Case* (40 Texas, 200), was excepted to at the time of its delivery; whilst the charge in the present case seems not to have been excepted to, and hence does not stand on the same footing. But further: in the present case the very error committed in Francis' case was corrected, and the latitude there given to the jury was in the charge in the present case restricted to the case on trial; and the jury could not have been misled by the charge, and have convicted upon testimony introduced to prove *scienter*, unless by deliberately disregarding the charge of the court. We find no material error in the charge of the court, of which the appellant is in condition to complain.

It is urged in the motion for a new trial that, because of an imperfect understanding between attorney and client,

certain questions were not asked of one of the defendant's witnesses, and that certain facts had been discovered since the trial which were important to the defence of the case, and which could be produced on another trial. Whilst the argument is a persuasive one, we are of opinion the court did not err in refusing a new trial on either of these grounds.

As to the sufficiency of the evidence to support the verdict, we can only say that but for one important fact in the evidence we might be more inclined to concur in the views of counsel ; but when we consider the standing, intelligence, and peculiar occupation of the defendant, as disclosed by the testimony, and the further fact that he obtained from the family of the deceased (Pyron) his genuine signature, clipped from the family Bible, and himself forwarded this signature to his particular friend and confederate at St. Louis, doubtless for the purpose of being used in the perpetration of these forgeries, we are forced to the conclusion that the proof sustains the verdict. It may be that the defendant, with his fair fame and repute among his neighbors, has become the victim of misplaced confidence ; but if this be the fact, it was not made to appear on his trial. We have examined the voluminous record of the case with care and solicitude and in view of the consequences to this appellant, and from an examination of the whole case, in the light of able and zealous argument, both oral and written, and not without sympathy as well, and have found no such error in the proceedings as would warrant an interference with the verdict and judgment. The judgment must therefore be affirmed.

*Affirmed.*